UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STATE FARM MUTUAL AUTO
INSURANCE COMPANY,

    Plaintiff,

v.                                               CASE NO.: 8:12-cv-2619-T-23EAJ

JOHN SPAHN, et al.,

    Defendants.
_____/

## ORDER

State Farm sues for declaratory judgment and argues that State Farm has no duty to defend or indemnify John Spahn, Spahn Construction, LLC, or Toby Case. State Farm moves (Doc. 40) for summary judgment. Linda Colgin, Benjamin Harvin, Mattie Tyler, and Douglas Baldwin oppose (Doc. 54) the motion for summary judgment. Spahn and Spahn Construction file no opposition.

## BACKGROUND

For January 6, 2012, through August 21, 2012, State Farm insured Spahn's Toyota Tundra under policy 6837-462-59C. The policy covers bodily injury that occurs during the life of the policy and that is "caused by [an] accident resulting from the ownership, maintenance[,] or use" of the Tundra. (Doc. 7-1 at 9) The policy

identifies several coverage exceptions, including exceptions 2(a) and 2(b), which state:

> THERE IS NO COVERAGE:
>
> . . . .
>
> 2. FOR ANY *BODILY INJURY* TO:
>
>    a. A FELLOW EMPLOYEE WHILE ON THE JOB AND ARISING FROM THE MAINTENANCE OR USE OF A VEHICLE BY ANOTHER EMPLOYEE IN THE EMPLOYER'S BUSINESS. *You* and *your spouse* are covered for such injury to a fellow employee.
>
>    b. ANY EMPLOYEE OF AN *INSURED* ARISING OUT OF HIS OR HER EMPLOYMENT. This does not apply to a household employee who is not covered or required to be covered under any worker's compensation insurance.

(Doc. 7-1 at 10) The policy defines "insured":

> When we refer to your car, a newly acquired car or a temporary substitute car, insured means:
>
> 1. you;
>
> 2. your spouse;
>
> 3. the relatives of the first person named in the declarations;
>
> 4. any other person while using such a car if its use is within the scope of consent of you or your spouse; and
>
> 5. any other person or organization liable for the use of such a car by one of the above insureds.

(Doc. 7-1 at 9)

Spahn and each employee had an understanding that Spahn would provide the employee transportation to and from the job sites. Tyler, Baldwin,[1] Gary Colgin, and Case each held no driver's license[2] and owned no automobile. The employees, other than Harvin, would meet at Spahn Construction (where most of the employees lived). Spahn, if present, or otherwise one of the employees would drive the Tundra to the day's job site. Spahn always acquired and paid for the Tundra's gasoline, and Spahn never charged an employee for transportation. The driver would pick-up Harvin from Harvin's home. No employee rode public transportation to or from a job site. After a day of work, everyone at the site would return to Spahn Construction in the Tundra. Other than loading or unloading the Tundra, the employees performed no work at Spahn Construction and received no pay for the travel.

On June 9, 2012, the passengers in the Tundra – Harvin, Tyler, Baldwin, and Colgin's husband, Gary Colgin – followed the typical routine. The passengers, other than Harvin, met at Spahn Construction in the morning to carpool to Spahn's construction site at Sessions Middle School. While traveling to Sessions Middle School, Case picked-up Harvin from Harvin's home. Between Harvin's home and

---

[1] After Spahn Construction hired Baldwin, Baldwin acquired a driver's license and an automobile. Baldwin traveled to the day's job site in his own automobile a few times before the accident but continued to regularly ride in the Tundra to save on gasoline and maintenance for his automobile.

[2] Case had a learner's permit.

Sessions Middle School, Case lost control of the Tundra, which overturned in a one-car accident. Spahn Construction employed everyone in the Tundra. Although the other passengers suffered non-fatal injuries, Gary Colgin died in the crash.

State Farm sues for declaratory judgment and argues that exceptions 2(a) and 2(b) apply to this accident and exclude coverage. State Farm denies liability to the passengers and denies a duty to defend or to indemnify Spahn, Spahn Construction, or Case.

**DISCUSSION**

In Florida, contract interpretation is a question of law. *St. Luke's Cataract & Laser Inst., P.A. v. Zurich Am. Ins. Co.*, 506 F. App'x 970, 975 (11th Cir. 2013). For an insurance contract, "if the salient policy language is susceptible to two reasonable interpretations, one providing coverage and the other excluding coverage, the policy is . . . construed strictly against the insurer that drafted the policy and liberally in favor of the insured." *Fayad v. Clarendon Nat. Ins. Co.*, 899 So. 2d 1082, 1086 (Fla. 2005) (citation omitted).

The disputed words in Spahn's policy are "arising out of," a frequently litigated phrase. *E.g., Farrer v. U.S. Fid. & Guar. Co.*, 809 So. 2d 85 (Fla. 4th DCA 2002); *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So. 2d 176, (Fla. 4th DCA 1997). The proper interpretation of "arising out of" depends on the purpose of the clause that contains the phrase:

> The "arising out of" clause is used in insurance policies in both coverage clauses and exclusionary provisions. On the one hand, insuring or coverage clauses are construed in the broadest possible manner to effect the greatest extent of coverage. On the other hand, exclusionary clauses in liability insurance policies are always strictly construed. Because the "arising out of" clause in this case is an exclusion of liability, it must be strictly construed.

*Farrer*, 809 So. 2d at 91 (citations and quotation marks omitted). Because, like the policy in *Farrer*, "arising out of" is used in Spahn's policy in an exclusionary clause, the phrase is strictly construed. However, insurance coverage is not the necessary result of strict construction of an exclusion. *See Westmoreland*, 704 So. 2d at 185 (construing "arising out of" against the insurer "does not itself inevitably result in coverage").

State Farm argues that the passengers' injuries, suffered in the June 9, 2012, accident, "ar[ose] out of" employment with Spahn Construction. State Farm cites several analogous worker's compensation cases that find that an employee's injury, incurred during travel to work, "arises out of" his employment. State Farm's interpretation of, and application of, worker's compensation law is not disputed by the defendants. Instead, the defendants argue that worker's compensation law differs from Spahn's automobile insurance policy. The defendants are mistaken.

While Spahn's policy is for automobile insurance, worker's compensation law influences the construction of the employment exclusion because of Florida's reluctance to permit either an overlap in, or a gap in, insurance coverage. For

example, construing automobile and general liability insurance, *Farrer v. U.S. Fidelity & Guaranty Company*, 809 So. 2d 85, 94 (Fla. 4th DCA 2002), holds:

> [A] comprehensive general liability policy should be construed as leaving no gap in coverage between it and an automobile policy. An automobile policy protects its insured for liability arising out of the use of that vehicle, while the general liability excludes coverage arising from the use of the vehicle. Generally, courts have been reluctant to find duplicate coverage under the two types of policies.

Florida historically prefers to construe an insurance policy neither to overlap with another policy nor to leave a gap between policies. For example, in *West American Insurance Co. v. Silverman*, 378 So. 2d 28 (Fla. 4th DCA 1979), an automobile passenger grabbed the driver's arm and caused the automobile to crash. The insurer argued that the injuries "arose out of" the use of the automobile and that the homeowner's policy explicitly excluded any injury "arising out of" the use of an automobile. Rather than consider only the homeowner's policy, *Silverman* explains that the coverage of automobile insurance influences the coverage of homeowner's insurance:

> The crux of this case is whether the alleged grabbing of the driver's arm by a passenger with a resulting accident may be said to create liability arising out of the use of an automobile. If so, then coverage may arguably be under an auto liability policy. On the other hand, if the grabbing of the driver's arm by the passenger does not create liability arising out of the use of an automobile, then coverage and a duty to defend exists under the homeowner's policy of the passenger. This is so since the automobile policy expressly includes coverage for the "use of an automobile," and the homeowner's policy expressly excludes coverage for injury arising from the "use of an automobile." Clearly, these two standard policies are intended to be complementary and not overlapping.

*Silverman*, 378 So. 2d at 31.

More recently, in *Westmoreland v. Lumbermens Mutual Casualty Co.*, 704 So. 2d 176 (Fla. 4th DCA 1997), which discusses the intersection of homeowner's insurance and automobile insurance, automobile exhaust fumes, leaking into a home from an automobile left running in the garage, killed the occupants of the home. Determining whether the insured's homeowner's insurance policy covered the deaths, *Westmoreland* explains that the "most important" factor is the intent of the insurer and finds that "there is specific intention in excluding some claims from the homeowner's coverage where a motor vehicle is used." 704 So. 2d at 183. The purpose of the automobile exclusion in a homeowner's insurance policy is "for the automobile policy and the homeowner's policy to be complementary to one another, that is, that the coverage under one takes up where the other leaves off, with neither hiatus nor overlapping of such coverage." *Westmoreland*, 704 So. 2d at 183 (quotation marks omitted). The court "consistently construed" the policies. *Westmoreland*, 704 So. 2d at 183. In short, worker's compensation coverage influences the interpretation of an employment exception if the automobile insurance intentionally complements worker's compensation insurance.

*State Farm Mutual Automobile Insurance Co. v. Roe,* 573 N.W.2d 628 (Mich. Ct. App. 1997), an almost identical situation, concludes that the employment exclusion complements worker's compensation insurance. The phrasing in *State Farm* – "arising out of his or her employment" – is identical to Spahn's employment

exclusion. *State Farm*, 573 N.W.2d at 632. Observing that the exclusion – "arising out of his or her employment" – resembles Michigan's worker's compensation coverage provision – "arising out of and in the course of employment"[3] – *State Farm* construes one in accord with the other and construes both to support worker's compensation as generally the exclusive remedy of a employee against an employer.

Both *State Farm* and the Florida cases commend the conclusion that Spahn's policy should complement, not overlap, Florida's worker's compensation. The Florida precedent clarifies that Florida disfavors an overlap in, or a gap in, insurance coverage.[4] Like Michigan, Florida's worker's compensation is the exclusive remedy for an employee. *Turner v. PCR, Inc.*, 754 So. 2d 683, 686 (Fla. 2000). Florida's worker's compensation coverage provision closely resembles the employment exclusion in Spahn's policy.[5] By "not apply[ing] to a household employee who is not

---

[3] Not troubled by the minor differences in the phrases, *State Farm* states, "[T]he exclusionary language at issue is identical to that used in § 301 of the worker's compensation act." 573 N.W.2d at 632.

[4] *See also Muzzio v. Auto-Owners Ins. Co.*, 799 So. 2d 272, 274 (Fla. 2d DCA 2001) (expressing an aversion to overlapping coverage); *Johnson v. Unigard Ins. Co.*, 387 So. 2d 1058, 1060 (Fla. 5th DCA 1980) ("The appellants have failed to convince us that overlapping . . . coverage by homeowners insurers and vehicle insurers, which would necessarily follow adoption of the [appellants'] theory, is either required by Florida law or in the public interest.").

[5] Florida's worker's compensation coverage provision requires an employer to cover any injury to an employee "arising out of work performed in the course and the scope of employment." Fla. Stat. § 440.09(1). And the statute's definition of "arising out of" explains that an injury "*arises out of employment* if work performed in the course and scope of employment is the major contributing cause of the injury or death." Fla. Stat. § 440.02(36) (emphasis added). Similarly, Spahn's employment exclusion applies if an employee's injury "aris[es] out of his or her employment." (Doc. 7-1 at 10)

covered or required to be covered under any worker's compensation insurance," the employment exception in Spahn's policy affirms that the policy intends to complement worker's compensation law. (Doc. 7-1 at 10)

Thus, Spahn's policy complements worker's compensation. The defendants have not argued in the alternative – State Farm's argument that the accident is covered by worker's compensation is effectively uncontested. A review of State Farm's uncontested arguments (Doc. 40 at 13-19) confirms that worker's compensation insurance covers this accident.[6] Accordingly, the employment exclusion applies to the injuries in this case, and State Farm has no duty to defend Spahn, Spahn Construction, or Case and has no duty to compensate the passengers. Because the duty to defend is broader than the duty to indemnify, State Farm also

---

[6] In short, although worker's compensation insurance usually excludes an injury sustained by an employee traveling to and from work, the passengers in the Tundra are covered by an exception to the general rule. As *Andrews v. Drywall Enterprises*, 569 So. 2d 821 (Fla. 1st DCA 1990), explains:

> The general rule is that injuries sustained when employees are going to and coming from work are not considered to arise out of and in the course of employment. *City of Fort Lauderdale v. Abrams*, 561 So. 2d 1294 (Fla. 1st DCA 1990). Such an injury is compensable, however, when the transportation "is the result of an expressed or implied agreement . . . or when it has ripened into a custom to the extent that it is incidental to and part of the contract of employment . . . or when it is the result of a continued practice in the course of the employer's business, and the practice is beneficial to both the employer and employee." *Huddock v. Grant Motor Company*, 228 So. 2d 898, 900 (Fla. 1969).

569 So. 2d at 823; *accord Swartz v. McDonald's Corp.*, 788 So. 2d 937, 943 (Fla. 2001) ("The employer-provided transportation exception . . . permits recovery where the employer provides the employee's transportation to and from work incident to an express or implied agreement."); *Securex, Inc. v. Couto*, 627 So. 2d 595, 596 (Fla. 1st DCA 1993) (recognizing that worker's compensation covers "transportation provided by the employer").

has no duty to indemnify. *Keen v. Florida Sheriffs' Self-Ins.*, 962 So. 2d 1021, 1024 (Fla. 4th DCA 2007).

Because, under exception 2(b), State Farm has neither a duty to defend nor a duty to indemnify, the plaintiff's remaining arguments are moot.

## CONCLUSION

The plaintiff's motion (Doc. 40) is **GRANTED**. The clerk is directed (1) to enter judgment in favor of the plaintiff and against the defendants, (2) to terminate any pending motion, and (3) to close the case.

ORDERED in Tampa, Florida, on October 7, 2013.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE